Chief Judge Ricardo S. Martinez

_____ FILED    _____ ENTERED
_____ LODGED    _____ RECEIVED

**SEP 11 2019**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR17-276RSM |
| Plaintiff | **PLEA AGREEMENT** |
| v. | |
| FEDIR OLEKSIYOVICH HLADYR, | |
| Defendant. | |

The United States of America, by and through undersigned counsel, and FEDIR OLEKSIYOVICH HLADYR, and his attorney, Arkady L. Bukh, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B):

1.    **Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charges contained in the Superseding Indictment:

a.    Conspiracy to Commit Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Section 1349.

b.    Conspiracy to Commit Computer Hacking, as charged in Count 16, in violation of Title 18, United States Code, Section 371.

Plea Agreement - 1
*United States v. Hladyr*, CR17-276RSM

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

The United States agrees to seek dismissal of Counts 2 to 15, and 17 to 26 at the time of sentencing.

2.     **Elements of Offenses**.  The elements of the offenses to which Defendant is pleading guilty are as follows:

a.     The elements of Conspiracy to Commit Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Section 1349, are as follows:

First, two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18 Chapter 63, as charged in the indictment, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343; and

Second, the defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Wire Fraud, are as follows:

First, the defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

Plea Agreement - 2
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      The elements of Conspiracy to Commit Computer Hacking, as charged in Count 16, in violation of Title 18, United States Code, Section 371, are as follows:

First, there was an agreement between two or more persons to commit at least one crime as charged in the indictment, namely, Accessing a Protected Computer in Furtherance of Fraud, in violation of Title 18, United States Code, Sections 1030(a)(4) and 1030(c)(3)(A); and, Intentional Damage To a Protected Computer, in violation of Title 18, United States Code, Sections 1030(a)(5)(A) and 1030(c)(4)(B)(i);

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements of Accessing a Protected Computer in Furtherance of Fraud, are as follows:

First, the defendant knowingly accessed without authorization, or exceeded authorized access to, a computer used in or affecting interstate or foreign commerce or communication, or located outside the United States but using it in a manner that affected interstate or foreign commerce or communication of the United States;

Second, the defendant did so with the intent to defraud;

Third, by accessing the computer without authorization, or exceeding authorized access to the computer, the defendant furthered the intended fraud; and,

Fourth, the defendant by accessing the computer without authorization, or exceeding authorized access to the computer, obtained anything of value.

The elements of Intentional Damage To a Protected Computer, are as follows:

First, the defendant knowingly caused the transmission of a program, a code, a command, or information to a computer;

Plea Agreement - 3
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       Second, as a result of the transmission, the defendant intentionally impaired

2 without authorization the integrity or availability of data, a program, a system, or

3 information;

4       Third, the computer was used in or affected interstate or foreign commerce

5 or communication, or located outside the United States but was used in a manner that

6 affects interstate or foreign commerce or communication of the United States; and,

7       Fourth, the offense caused (i) loss to one or more persons during a 1-year

8 period aggregating at least $5,000.00 in value, or (ii) damage affecting 10 or more

9 protected computers during a 1-year period.

10     3.   **The Penalties**. Defendant understands that the statutory penalties

11 applicable to the Offenses to which he is pleading guilty are as follows:

12     a.   For the offense of Conspiracy to Commit Wire Fraud, as charged in

13 Count 1: A maximum term of imprisonment of up to twenty (20) years, a fine of up to

14 $250,000.00, a period of supervision following release from prison of up to three (3)

15 years, and a mandatory special assessment of one hundred dollars ($100).

16     b.   For the offense of Conspiracy to Commit Computer Hacking, as

17 charged in Count 16: A maximum term of imprisonment of up to five (5) years, a fine of

18 up to $250,000.00, a period of supervision following release from prison of up to three

19 (3) years, and a mandatory special assessment of one hundred dollars ($100).

20     If a probationary sentence is imposed, the probation period can be for up to five

21 (5) years. Defendant agrees that the special assessment shall be paid at or before the time

22 of sentencing.

23     Defendant understands that supervised release is a period following imprisonment

24 during which he will be subject to certain restrictive conditions and requirements.

25 Defendant further understands that if supervised release is imposed and he violates one or

26 more of the conditions or requirements, Defendant could be returned to prison for all or

27 part of the term of supervised release that was originally imposed. This could result in

28

Plea Agreement - 4
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | Defendant's serving a total term of imprisonment greater than the statutory maximum
2 | stated above.

3 | Defendant understands that as a part of any sentence, in addition to any term of
4 | imprisonment and/or fine that is imposed, the Court may order Defendant to pay
5 | restitution to any victim of the offense, as required by law.

6 | Defendant further understands that a consequence of pleading guilty may include
7 | the forfeiture of certain property either as a part of the sentence imposed by the Court, or
8 | as a result of civil judicial or administrative process.

9 | Defendant agrees that any monetary penalty the Court imposes, including the
10 | special assessment, fine, costs, or restitution, is due and payable immediately and further
11 | agrees to submit a completed Financial Statement of Debtor form as requested by the
12 | United States Attorney's Office.

13 | 4.    **Rights Waived by Pleading Guilty.**  Defendant understands that by
14 | pleading guilty, he knowingly and voluntarily waives the following rights:

15 | a.    The right to plead not guilty and to persist in a plea of not guilty;

16 | b.    The right to a speedy and public trial before a jury of his peers;

17 | c.    The right to the effective assistance of counsel at trial, including, if
18 | Defendant could not afford an attorney, the right to have the Court appoint one for him;

19 | d.    The right to be presumed innocent until guilt has been established
20 | beyond a reasonable doubt at trial;

21 | e.    The right to confront and cross-examine witnesses against Defendant
22 | at trial;

23 | f.    The right to compel or subpoena witnesses to appear on his behalf at
24 | trial;

25 | g.    The right to testify or to remain silent at trial, at which trial such
26 | silence could not be used against Defendant; and

27 | h.    The right to appeal a finding of guilt or any pretrial rulings.

28 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

6.    **Restitution.** The parties agree that they will recommend that the Court apportion liability for restitution owed to all victims of the criminal conduct committed by the criminal organization charged in the conspiracies described herein, including the fraud loss on card issuers, financial institutions, breached victim companies, insurance companies, cardholders, and vendor businesses. Defendant agrees to pay restitution in the apportioned amount of $2,500,000 (which shall <u>not</u> be joint and several with any other FIN7 defendant). Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

7.    **Forfeiture of Assets**. Defendant agrees, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), to forfeit to the United States, immediately, all of his right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense set forth in Count 1 of the Superseding Indictment, including but not limited to a judgment for a sum of money in the amount of $100,000, representing, in part, the proceeds that Defendant obtained as a result of the offense set forth in Count 1.

Defendant understands and acknowledges that the sum of money the United States seeks to forfeit is separate and distinct from the restitution that is ordered in this case.

Defendant further agrees, pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i), to forfeit to the United States, immediately, all of his right, title, and interest in any and all property constituting, or derived from, proceeds Defendant obtained, directly or indirectly, as the result of the offense set forth in Count 16 of the Superseding Indictment, and further to forfeit Defendant's interest in any personal property that was used, or intended to be used, to commit, or to facilitate the commission of, that offense, including but not limited to the following:

1          a.    A Samsung 1TB SSD, model: 850 EVO, serial number:
2    S2PWNXOHAO1657T.

3          Defendant agrees to fully assist the United States in the forfeiture of the above-
4    described property and to take whatever steps are necessary to pass clear title to the
5    United States, including but not limited to: surrendering title and executing any
6    documents necessary to effectuate such forfeiture; assisting in bringing any assets located
7    outside the United States within the jurisdiction of the United States; and taking whatever
8    steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed,
9    wasted, hidden, or otherwise made unavailable for forfeiture.  Defendant agrees not to
10   file a claim to any of the above-described property in any federal forfeiture proceeding,
11   administrative or judicial, which may be or has been initiated.

12         The United States reserves its right to proceed against any remaining property not
13   identified in this Plea Agreement, including any property in or over which Defendant has
14   any interest or control, if that property is subject to forfeiture under any federal statute.

15         8.    **Abandonment of Contraband/Property**. Defendant agrees that if any
16   federal law enforcement agency seized any firearms, ammunition, firearm accessories, or
17   contraband that were in Defendant's direct or indirect control, Defendant abandons any
18   and all interest in those assets and consents to their federal administrative forfeiture,
19   official use, and/or destruction by the federal law enforcement agency that seized them.
20   Defendant further agrees to abandon his interest in, and consents to the destruction of, the
21   following electronic device and any data contained within:   a Samsung 1TB SSD, model:
22   850 EVO, serial number: S2PWNXOHAO1657T.

23         9.    **Statement of Facts**.  The parties agree on the following facts.  Defendant
24   admits he is guilty of the charged offense or offenses:

25         a.    Defendant Fedir Olekisyovych Hladyr was born in December 1984, and is a
26   Ukrainian national.  Defendant Hladyr used various aliases and nicknames, including, but
27   not limited to "Fedor Gladyr," "Fedir Oleksiyovych Gladyr," "Gladyr Fedir

28

Plea Agreement - 7
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Oleksiyovych," "Gladyr Fedor Oleksiyovich," "Fedor," "das," "Fyodor," and
2  "AronaXus."

3      b.      From approximately August 2015, to his arrest on January 10, 2018,
4  Defendant was a member of a financially-motivated hacking group commonly referred to
5  as "FIN7." Beginning at a time unknown, but no later than August 2015, and continuing
6  through the day of Defendant's arrest, FIN7 launched attacks against hundreds of U.S.
7  companies in an effort to breach the network security of those victims and to steal
8  financial information and non-public information. FIN7 consists of dozens of
9  experienced computer specialists located in multiple countries. As discussed below,
10 Defendant knowingly and intentionally entered into an agreement with other members of
11 FIN7 to gain unauthorized access to protected computers and servers of hundreds of
12 protected computer networks located in the Western District of Washington, and
13 elsewhere in the United States, with the goal of stealing financial information that could
14 then be sold for financial gain.

15     c.      FIN7 used a front company called Combi Security to recruit hackers and to
16 provide a veil of legitimacy to the illegal enterprise. Combi Security portrayed itself as a
17 legitimate computer security company that provided penetration-testing services to a
18 variety of companies around the world. On its public website, Combi Security presented
19 itself as "one of the leading international companies in the field of information security."
20 In truth and fact, Combi Security carried out no legitimate work, and was not hired by
21 any company to provide security-related services.

22     d.      FIN7 carried out its attacks primarily through the use of phishing emails
23 and the use of social engineering techniques to encourage the recipients of the phishing
24 emails to inadvertently activate malware contained in or attached to the emails. Once
25 activated, the malware would connect a compromised victim computer to a network of
26 command and control servers located around the world. Through its command and
27 control infrastructure, FIN7 would upload additional malware onto victim computers,
28 conduct surveillance, and otherwise maintain remote control of victim computers. After

Plea Agreement - 8
*United States v. Hladyr*, CR17-276RSM

1  breaching a particular victim's computer, FIN7 would use that computer to establish a

2  foothold in the victim's network, and then move laterally through the network to locate

3  sensitive financial information, such as payment card information, that could be stolen

4  and monetized.

5      e.    Among other targets, FIN7 sought to locate point-of-sale ("POS") systems

6  through which it could remotely upload malware onto POS terminals that were used to

7  process payment card transactions at thousands of retail and commercial locations across

8  the United States.  FIN7 then used the malware to scrape and exfiltrate the payment card

9  information.  In doing so, FIN7 caused to be transmitted in interstate and foreign

10  commerce, numerous wire communications and electronic commands, including

11  communications and commands to POS terminals located in the Western District of

12  Washington.

13      f.    On approximately August 28, 2015, Defendant Hladyr was hired to be a

14  systems administrator for Combi Security.  One of Defendant's responsibilities was to

15  provide dozens of FIN7 members with access to a variety of communication servers and

16  command and control servers used by the hacking group.  These servers included, Jabber,

17  JIRA, HipChat, and custom botnet control panel servers, among many others.

18      g.    Shortly after joining Combi Security, Defendant became aware of the fact

19  that Combi Security was not a legitimate company.  Combi Security was the front

20  company for an illegal enterprise that was attempting to breach the network security of

21  victim companies without their knowledge or authorization.  At no time during his work

22  with Combi Security did Defendant see: (1) any indication (written or otherwise) that

23  Combi Security had been hired to perform penetration testing; (2) any reports or

24  recommendations written by Combi Security to purported customers explaining

25  vulnerabilities in the customers' network security and offering recommendations on how

26  to fix those vulnerabilities; or (3) any measures taken to appropriately safeguard from

27  misuse the confidential information taken from the victims networks, such as network

28  credentials, network maps, and sensitive business information.

Plea Agreement - 9
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.    After Defendant joined FIN7/Combi Security, he quickly received more and more responsibility in the hacking scheme.  Among other things, he was responsible for aggregating stolen payment card information, providing technical guidance to FIN7 members, issuing assignments to FIN7 hackers, and supervising teams of hackers. Defendant routinely relayed orders from FIN7's top-tier leadership to other members of the group.

i.    One of Defendant's responsibilities was managing communications servers such as FIN7's HipChat server.  Defendant created HipChat user accounts for FIN7 members that allowed them to access one of FIN7's communication servers.  Defendant also created and participated in multiple HipChat "rooms" with other FIN7 members and participated in the uploading and organization of stolen payment card data and malware. For example, on March 14, 2016, Defendant uploaded an archive that contained numerous data files created by malware designed to steal data from point-of-sale systems that process payment cards.  The files contained payment card numbers stolen from a victim company that had publicly reported a security breach that resulted in the compromise of tens of thousands of payment cards.

j.    One of FIN7's primary objectives was to steal payment card information from victim companies.  FIN7 stole information for tens of millions of payment cards from U.S. companies, and then offered that stolen information for sale, including for sale on underground forums such as Joker Stash.  That payment card information typically included the payment card number, the name of the payment cardholder, and the zip code in which the card was used, among other data.  FIN7 members understood that the stolen payment card data would be used to conduct fraudulent transactions across the United States and in foreign countries.

k.    While Defendant was working for FIN7, a number of companies publicly reported that they had suffered data breaches involving the theft of payment card information that were later attributed to FIN7.  For example, Chipotle publicly disclosed

Plea Agreement - 10
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  a data breach that impacted approximately 3.9 million payment cards, and Jason's Deli

2  publicly disclosed a data breach that impacted approximately 2 million payment cards.

3         l.     During the course of the scheme, Defendant made at least $100,000 for his

4  participation in FIN7.  For the purposes of this plea agreement, the parties agree that –

5  during Defendant's participation in the malware scheme – FIN7 illegal activity resulted

6  in over $100 million in losses to financial institutions, merchant processors, insurance

7  companies, retail companies, and individual cardholders.  These losses included, *inter*

8  *alia*, costs associated with fraudulent purchases made with the stolen payment card

9  information, replacing compromised payment cards, removing FIN7's malware from

10  compromised systems, and responding to law enforcement requests for information in

11  connection with this prosecution.  In addition, FIN7 caused loss to 10 or more victim

12  companies by breaching the victim companies' network security that far exceed $5,000 in

13  each year from 2015 to 2018.

14         The parties further agree that the Court may consider additional facts contained in

15  the Presentence Report (subject to standard objections by the parties) and/or that may be

16  presented by the United States or Defendant at the time of sentencing, and that the factual

17  statement contained herein is not intended to limit the facts that the parties may present to

18  the Court at the time of sentencing.

19         10.    **United States Sentencing Guidelines**.  Defendant understands and

20  acknowledges that the Court must consider the sentencing range calculated under the

21  United States Sentencing Guidelines and possible departures under the Sentencing

22  Guidelines together with the other factors set forth in Title 18, United States Code,

23  Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the

24  history and characteristics of the defendant; (3) the need for the sentence to reflect the

25  seriousness of the offenses, to promote respect for the law, and to provide just

26  punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to

27  criminal conduct; (5) the need for the sentence to protect the public from further crimes

28  of the defendant; (6) the need to provide the defendant with educational and vocational

Plea Agreement - 11
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  training, medical care, or other correctional treatment in the most effective manner;

2  (7) the kinds of sentences available; (8) the need to provide restitution to victims; and

3  (9) the need to avoid unwarranted sentence disparity among defendants involved in

4  similar conduct who have similar records.  Accordingly, Defendant understands and

5  acknowledges that:

6        a.      The Court will determine applicable Defendant's Sentencing

7  Guidelines range at the time of sentencing;

8        b.      After consideration of the Sentencing Guidelines and the factors in

9  18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the

10  maximum term authorized by law;

11        c.      The Court is not bound by any recommendation regarding the

12  sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

13  range offered by the parties or the United States Probation Department, or by any

14  stipulations or agreements between the parties in this Plea Agreement; and

15        d.      Defendant may not withdraw his guilty pleas solely because of the

16  sentence imposed by the Court.

17        11.    **Sentencing Factors**.  The parties agree that the following United States

18  Sentencing Guidelines ("USSG") provisions apply to this case:

19        a.      A base offense level of 6, pursuant to USSG § 2B1.1(a)(2).

20        b.      An offense level enhancement of 30 levels (+30), based on a loss

21  amount of more than $550,000,000, pursuant to USSG § 2B1.1(b)(1)(P).  For the

22  purposes of this plea agreement, the parties agree to limit the number of stolen payment

23  cards to 5.9 million.  Pursuant to Application Note 3(F)(i), a $500 loss amount is imputed

24  to each payment card, resulting in a total loss amount, for Guidelines purposes, of

25  $2,950,000,000.

26        c.      An offense level enhancement of 2 levels (+2), because the offense

27  involved more than 10 victims, pursuant to USSG § 2B1.1(b)(2)(A).

28

Plea Agreement - 12
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      An offense level enhancement of 2 levels (+2), because the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, pursuant to USSG § 2B1.1(b)(4).

e.      An offense level enhancement of 2 levels (+2), because a substantial part of the fraudulent scheme was committed from outside the United States and because the offense involved sophisticated means and the defendant intentionally engaged in and caused the conduct constituting sophisticated means, pursuant to USSG § 2B1.1(b)(10).

f.      An offense level enhancement of 2 levels (+2), because the offense involved the trafficking in unauthorized access devices and counterfeit access devices and because the offense involved the possession of more than 5 means of identification that were unlawfully obtained, pursuant to USSG § 2B1.1(b)(11).

g.      An offense level enhancement of 3 levels (+3), because the defendant was a manager (but not an organizer or leader) and the criminal activity involved more than five participants and was extensive, pursuant to USSG § 3B1.1(b).

h.      An offense level reduction for acceptance of responsibility, as set forth in paragraph 12, below, conditioned upon Defendant's fulfillment of the requirements stated at USSG § 3E1.1.

i.      Defendant's Guidelines range is 25 years, because the statutory authorized sentence is less than the minimum of the applicable Guidelines range, pursuant to USSG § 5G1.1.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines.  Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

12.      **Acceptance of Responsibility.**  At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or

greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

13. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, including the offenses to which Defendant is pleading guilty, and some offense make removal from the United States is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty pleas may entail, even if the consequence is his mandatory removal from the United States.

14. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington and the Computer Crime and Intellectual Property Section of the United States Department of Justice agree to dismiss other pending counts at the time of sentencing and agree not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Plea Agreement - 14
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15.   **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence.  Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement.  Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Superseding Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

Plea Agreement - 15
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.   **Waiver of Appellate Rights and Rights to Collateral Attacks.**
Defendant acknowledges that by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court.  Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

a.   Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.   Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17.   **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

18.   **Statute of Limitations**.  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

1   the statute of limitations shall be deemed to have been tolled from the date of the Plea

2   Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea

3   Agreement by the Court; or (2) thirty (30) days following the date on which a breach of

4   the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

5

6

7   //

8

9

10   //

11

12

13   //

14

15

16   //

17

18

19   //

20

21

22   //

23

24

25   //

26

27

28

Plea Agreement - 17
*United States v. Hladyr*, CR17-276RSM

19.     **Completeness of Agreement**.  The United States and Defendant acknowledge that, except as to certain matters set forth during the plea colloquy in open court, these terms constitute the entire Plea Agreement between the parties.  This Agreement binds only the United States Attorney's Office for the Western District of Washington and the Computer Crime & Intellectual Property Section of the United States Department of Justice.  It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 11ᵗʰ day of September, 2019.

_____
FEDIR OLEKSIYOVICH HLADYR
Defendant

_____
ARKADY L. BUKH          #44446  Emily Gause
Attorney for Defendant            for

_____
ANDREW C. FRIEDMAN          for
Assistant United States Attorney

_____
FRANCIS FRANZE-NAKAMURA
STEVEN MASADA
Assistant United States Attorneys

_____
ANTHONY TEELUCKSINGH          for
Trial Attorney, Computer Crime and Intellectual
Property Section, Department of Justice

Plea Agreement - 18
*United States v. Hladyr*, CR17-276RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970